Alexander Del Giorno, J.
This claim is brought against the State to recover damages for alleged breach of contract by the State, and has not been assigned.
A proposal was made by the Division of Standards and Purchase at Albany, New York, on August 19, 1954, containing specifications relating to the manufacture of badges (Long Service Medals) and providing for the opening of bids on September 3, 1954.
The award was made to the claimant on September 4, 1954. Item No. 1 thereof related to the manufacture of Long Service Medals — 25 year, first class, complete as per Item 2 of the specifications, and to be numbered consecutively from 1,744 to 1,843, inclusive. There were to be 100 of these medals made, the price of each of which was to be $123.49, the total sum *517 being $12,349; Item No. 2 called for the manufacture of Long Service Medals — 20 year, second class, complete as per Item 3 of the specifications, and to be numbered consecutively 2,563 to 2,612. There were to be 250 of these medals made, the price of which was to be $17.59 each, totaling $4,397.50. The grand total of Items 1 and 2 was the sum of $16,746.50.
The contract was awarded by the State to the claimant on September 14, 1954 and bore contract No. P4614. General specifications were received by the claimant, attached to which was a performance bond furnished by claimant in the sum of $4,185. Specifications dated September 25, 1953 were received also by claimant, the pertinent part of which is contained on page 2 thereof, where reference is made to Items 2, 3, 4 and 5.
A purchase order, dated October 26, 1954, in accordance with the terms of the contract, was received subsequently by claimant.
The president of claimant described the medals included in Item 1 as being made of 24 karat fine gold and containing five segments, each with a different embossed character, in the center of which was a shield with an eagle and lettering, and on the back of each of which a number was engraved.
The first delivery of medals was made on November 3, 1954 and consisted of 24 medals; the second delivery on November 16, 1954, 56 medals; the third and fourth deliveries comprising the vest of the medals, were made prior to December 1, 1954. During all of this time, no complaint as to the medals was made by the State to the claimant. On December 1, 1954, a letter was received by claimant, written by John A. MacCormack, Commissioner of the Division of Standards and Purchase, which stated that with respect to Item 1, long service medals 25 years, first class, a check of the medals delivered indicated that they were not in accordance with specifications. The grounds specified were that “ The workmanship is not first class as specified; the finish is not first class; the edges áre not free of die marks, file marks are visible; edges are not smooth or polished; numbering as specified but workmanship is only fair; jump rings not as specified; tool marks are visible; ring is not hard soldered, it remains open. ’ ’ The contract was declared cancelled and a statement made that all delivered medals were to be returned.
On December 6, 1954, 99 medals were returned to claimant, who selected four medals therefrom at random and took them to one Pitkin, an assayer, in New York City. The other medals, except for three which were kept for evidence, were salvaged, the sum received therefor being $8,339.27. Prior to salvage, a *518 report was made to claimant by Pitkin on December 6, 1954. The president of claimant testified that the medals delivered were in conformance with the specifications. The damage alleged to have been sustained by claimant as to the medals in Item 1 was the difference between the contract price, $12,349 and the amount received for salvage, $8,339.27. Dividing $8,339.27 by the 95 medals scrapped by the assayer, the court figures each medal to have had a basic gold value of $87.78. The gold content of the three medals retained by the claimant would be worth $263.34. Adding $8,339.27 to the latter sum, we shall here debit the claimant with the sum of $8,602.61 which, when deducted from the contract price, leaves a damage value of $3,746.39.
The 20-year medals included in Item 2 of the contract, the contract price of which was $4,397.50, were delivered to the State and retained by it. The latter deducted the sum of $615 pursuant to section 53 of the general specifications, without the consent of the claimant, which sum the State claimed represented the difference between claimant’s bid and that of the next highest bidder.
The damage claimed, therefore, is the sum of $4,361.39, representing the balance claimed to be due on Item 1, the sum of $3,746.39, plus the balance alleged to be due on item 2, $615.
State’s witness Kenney testified that he is employed in the Adjutant General’s office, which was concerned primarily with the matter of the medals, and that on November 3, 1954, the first of four shipments was received; that he noted the medals did not appear to be similar to those on hand; that one Miss Mulligan, a full-time clerk, checked the shipment and caused a note to be given to Colonel Lennart, now retired, who put the medals in the office safe. Subsequently, the other three shipments arrived, and Lennart contacted the Division of Standards and Purchase. There followed the letter of the latter to the claimant, dated December 1, 1954.
The witness Liqued, senior purchasing agent in the Division of Standards and Purchase, stated that he discussed the matter with Colonel Lennart in November, 1954. Later one of the medals was brought to Lennart. This medal was numbered 1,775. He compared it with the medal on display in the Division of Military Affairs on bidder inspection in accordance with the specifications which provided, page 2 thereof, that ‘ ‘ samples of medals are available for examination in the Personnel Division. The Adjutant General’s Office ”. This medal was numbered 1,617. On inspection, there appeared to be a difference between *519 the two in that the embossing on the standard medal showed a better delineation than did that on the one manufactured by claimant. He then took both medals to the deputy Commissioner, and after they both inspected the medals, Liqued, on instructions from the Commissioner, brought them to W. Reynolds Carr, a manufacturing jeweler in Albany, for inspection and report. The medals were returned by Carr on or about November 29, 1954. The contract was cancelled on the basis of Carr’s report.
This witness testified also that in May, 1953, a prior contract had been awarded to this claimant for similar 25-year Long Service Medals, and that within six months thereafter it became his duty to pass upon the medals which had been delivered. Finding that there were various differences between the medals delivered and those prescribed by the specifications, he arranged for a conference with the claimant. The result of this conference was that, even though the general specifications provide that the requirements are minimum, allowances were made for the differences, State objections were withdrawn and payment was made by the State.
W. Reynolds Carr, a manufacturing jeweler serving retail jewelers since 1919, engages in the designing, fashioning and manufacturing of jewelry. As a result of a comparison made by him between the 25-year medal manufactured by claimant and that required by the specifications, he stated that: (1) the design of claimant’s medal was excellent and complied fully with specifications; (2) the bar and wreath on the upper part of claimant’s medal is pierced above and below by two loops, as specified; the medal jump-ring (link connecting medal and upper portion) not soldered although specifications demanded soldering; (3) the finish, as to which specifications stated the edges must have been smooth and free from die marks, was defective in that the die marks could be felt by his fingernail, although they could not be seen. He stated that the condition of the edges could be remedied by the use by a jeweler of a fine file to remove any burrs, and by the use of a circular felt wheel with polishing compound. The witness stated unequivocally that the following specifications were met fully: fine gold, 999/1000; weight, 50 Troy weight; jumpering, connecting wreath; thickness of metal; bars, 25 year, to be pierced; individual packing. In answer to the questions of the court, he testified that if soldering were done and die marks removed where they occur and if the medals were polished, the medals would be acceptable and in conformance with specifications; *520 that the maximum cost of thus making the medal conform to specifications and pleasing and desirable, would be $4 per medal.
The medals were delivered by the claimant to the State between November 3, 1954 and November 22, 1954. Although the State was aware on November 3, the date of the first shipment, that there might have been a difference between the medals manufactured by claimant and those demanded by the specifications, the medals nevertheless were placed in a safe. The other three shipments were permitted to arrive, no complaint as to their nature or quality having been made to claimant. On December 1, 1954, a letter was received by claimant from the State canceling the contract.
This court is of the opinion that if a discrepancy in the medals as ordered and received was noted (and particularly after receiving Mr. Carr’s report) the State within a reasonable time after such discovery, should have arranged a conference with the claimant in order that any differences or imperfections might be discussed. It was not reasonable for the State, claiming that there were differences noted at the time of the first delivery on November 3, to permit the arrival of three further shipments at various subsequent times and then, on December 1, 1954, to cancel the contract for that reason. On a previous occasion, in May, 1953, involving a contract with this claimant ■ for medals, the State had arranged for such a conference under similar circumstances; as a result, allowances and adjustments were made for the differences in the medals specified and those delivered, the State’s objections being withdrawn and payment being made by the State.
According to the testimony of the State’s own expert witness, there was substantial, if not complete performance by claimant of its contract with the State. After going through the specifications, item by item, and comparing with them the physical properties of the sample medal chosen by the State from those delivered, he stated that if soldering were done on claimant’s delivered medals and die marks removed where they occur, and if the medals were polished, the medals would be acceptable and in conformance with specifications; he stated further that the maximum cost of making the medal conform to specifications, and pleasing and desirable, would be $4 per medal. Claimant pursued the proper course, under the circumstances, in effecting salvage of 95 of the 99 medals returned by the State to the extent of $8,339.27.
There is no dispute that the claimant delivered the medals set forth in Item 2 of the contract, namely, the 20-year medals, and *521 that they were according to specifications. With respect to the sum of $615 which the State deducted from the price set forth in the contract for Item 1, upon the ground that this amount represented the difference between claimant’s bid and that of the next highest bidder, the court finds the record barren of evidence to justify such deduction, nor was there any evidence to indicate the amount offered by the next highest bidder.
The State breached the contract with the claimant, and damages therefor must be awarded to claimant. The contract price of Item 1 was $12,349 and the benefits obtained by the claimant by salvage of 95 medals and retention of 3 medals was the sum of $8,602.61, leaving a balance of $3,746.39; from this amount the court directs that the sum of $400 be deducted, representing what would have been the cost of making the medals delivered under Item 1 conform to specifications, i.e., 100 medals (including one medal presently held by the State) at $4 each, leaving a balance of $3,346.39; to the latter amount must be added the sum of $615, the amount due and unpaid on Item 2, making a total of $3,961.39 to which claimant is entitled, with interest from December 1,1954.
At its option, the State may return the medal it retained. If it does, it shall be credited with the further sum of $87.78.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.